Michael Millen
Attorney at Law  (#151731)
119 Calle Marguerita  Ste. 100
Los Gatos, CA  95032
Telephone:  (408) 871-0777
Fax:  (408) 866-7480
mikemillen@aol.com

Attorney for Plaintiff Balbuena

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE DIVISION)

| | |
|---|---|
| CESAR BALBUENA,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE, SERGEANT RAUL MARTINEZ,  SERGEANT BERTRAND MILLIKEN, and UNKNOWN OFFICERS,<br><br>    Defendants. | NO.:  18-cv-02566-LHK<br><br>**AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATION; DEMAND FOR JURY TRIAL**<br><br>**1.  42 U.S.C. § 1983 (4th/14th)**<br>**2.  42 U.S.C. § 1983 (5th/14th)**<br>**3.  Cal. Civil Code §52.1**<br>**4.  False Arrest**<br>**5.  False Imprisonment**<br>**6.  Conversion**<br>**7.  Trespass to Chattels**<br>**8.  Negligence** |

Plaintiff alleges as follows:

1.  Plaintiff CESAR BALBUENA is a natural person.

2.  Defendant the CITY OF SAN JOSE is and at all times mentioned herein was a municipal corporation which has, as one of its constituent parts, a department commonly known as the "San Jose Police Department".

2.4 Defendant SERGEANT RAUL MARTINEZ was at all times mentioned herein, employed by the CITY OF SAN JOSE as a sworn police officer in the San Jose Police Department.

1    2.6 Defendant SERGEANT BERTRAND MILLIKEN was at all times

2    mentioned herein, employed by the CITY OF SAN JOSE as a sworn police officer

3    in the San Jose Police Department.

4    3.  Defendants UNKNOWN OFFICERS, at all times mentioned herein, were

5    employed by the CITY OF SAN JOSE as sworn police officers in the San Jose

6    Police Department and are responsible for the harms to plaintiff mentioned in this

7    complaint.  When their names are ascertained this complaint will be amended to

8    reflect their real names.  Each is being sued in his or her individual capacity.

9    4.  **JURISDICTION:**   This Court has jurisdiction over this action pursuant

10   to Title 28 U.S.C. §§1331 and 1343(3) in that the controversy arises under the

11   United States Constitution and under Title 42 U.S.C. §1983 and Title 28 U.S.C.

12   §2201.  This Court has authority to award attorneys fees pursuant to Title 42 U.S.C.

13   §1988.  Plaintiffs further invoke the supplemental jurisdiction of this Court under 28

14   U.S.C. §1367(a) to hear and adjudicate state law claims.

15   5.  **INTRADISTRICT ASSIGNMENT:**  Venue is proper in this district and

16   division under 28 U.S.C. §1391(b) because a substantial part of the events giving

17   rise to the claims in this action occurred in this district and division.

18   6.  In 2017, plaintiff earned income as a private driver through the Uber

19   Driver program.  Uber is a company which created and maintains a smartphone

20   application that facilitates riders hiring an on-demand private driver.

21   7.  In 2017, plaintiff did not have a residence in Santa Clara County.  Rather,

22   he lived out of his vehicle and took showers at a gym at which he had a paid

23   membership.

24   8.  On or about Nov. 26, 2017, in the early morning hours, the Uber

25   smartphone application signaled plaintiff that a person was seeking a ride from a

26   business park located in the vicinity of the 2100 block on Ringwood Ave in San

27   Jose, California.

28

9. Plaintiff drove to the location and met the person who indicated he had placed the Uber order. For ease of reference, this person will be denominated as "Rider 1" in this complaint.

10. Plaintiff initially met Rider 1 near the street. Rider 1 told plaintiff that there were two additional riders (herein "Rider 2" and "Rider 3") whom Rider 1 also wished to be additional passengers. Plaintiff agreed and Rider 1 got into the car. Rider 1 directed plaintiff to drive into the parking area in the business park as Rider 1 indicated.

11. Upon arriving in the parking area, plaintiff observed that there were numerous people who appeared to be leaving some sort of party-type gathering. Plaintiff saw that the people were walking to their cars in the parking lot and then driving away.

12. Rider 1 then left plaintiff's car and returned along with Rider 2 and Rider 3. Rider 2 and Rider 3 entered plaintiff's car but Rider 1 did not; instead, Rider 1 said that he wanted to go and check on someone whom he said was lying down on the ground.

13. While waiting for Rider 1 to return to the car, Plaintiff had casual conversation with Rider 2 and Rider 3. After some time had elapsed, plaintiff decided to find Rider 1. Plaintiff drove his car to that part of the parking lot where he believed Rider 1 to be.

14. Upon arrival at this part of the parking of the lot, plaintiff saw Rider 1 standing near the body of a man. Plaintiff exited the car, walked over to Rider 1, and then became concerned at the presence of the unmoving person on the ground.

15. Plaintiff encouraged Rider 1 to call for emergency help.

16. A group of people came over and told plaintiff that the man was a "cousin" named "Ricky". One person in the group started to administer CPR to Ricky.

17.  Plaintiff became concerned as to why there was still no ambulance on the scene.  He wondered if Rider 1 was on the street waiting for the ambulance and decided to drive in that direction to see.  As plaintiff drove through the parking lot, he came upon Rider 1 who entered the car.  Plaintiff then drove out of the parking lot and onto the street (Ringwood) to await arrival of the ambulance.

18.  As plaintiff was driving on the street a fire truck arrived and pulled to the side of the road.  Plaintiff spoke with someone in the fire truck and ultimately the fire truck followed plaintiff's car to the scene where Ricky was lying down.

19.  After seeing that the paramedics were on the scene, plaintiff parked his car and then exited the vehicle to observe the paramedics.

20.  The paramedics informed plaintiff that Ricky was not breathing.  Plaintiff later learned that Ricky had died.

21.  A few minutes later a number of San Jose police officers arrived on the scene.

22.  An officer who appeared to be a police sergeant approached plaintiff and asked plaintiff for his identification.  Plaintiff asked "Why?" and the sergeant said because the location was "a crime scene".  Plaintiff gave his driver's license to the sergeant who then proceeded to request identification from everyone in the vicinity, including Rider 1, Rider 2, Rider 3, and the men still remaining from the group which had identified Ricky initially.

23.  The sergeant then directed various police officers to interview the various persons at the scene from whom he had taken identification.  It appeared that a different police officer was assigned to interview each person separately.

24.  An officer interviewed plaintiff and plaintiff explained his version of events as outlined above.  The officer then told plaintiff that plaintiff would probably be the first one allowed to leave because Uber would "clear" plaintiff.

1  Plaintiff understood he was not free to leave until given permission, and at no point

2  did anyone tell plaintiff he was free to leave the scene.

3      25.  After a little while, a police officer stated that they (the police) were

4  going to bring everyone down to the "witness center".  Plaintiff, having never been

5  given permission to leave, understood that he had no choice but to comply with the

6  officer's directive to go to the witness center.  This was particularly true given that

7  the police had never returned to plaintiff his driver's license.  A police officer

8  approached plaintiff and asked plaintiff for permission to search plaintiff's car.

9  Plaintiff declined.  The police officer then told plaintiff that if plaintiff did not give

10  the police permission to search the car, they would impound the car.  Plaintiff

11  continued in his refusal to allow the search.  Plaintiff is informed and believes and

12  thereon alleges that the police took possession and control of plaintiff's car later that

13  day.

14      26.  Plaintiff was then brought to the witness center in a police car.  After

15  plaintiff entered the witness center, a police officer demanded that plaintiff hand

16  over his phone.  Plaintiff complied with the demand, believing he had no choice in

17  the matter.

18      27.  An officer then re-interviewed plaintiff and asked questions about various

19  topics, such as plaintiff's Uber driving, residence, and family.  After the interview

20  was over, the officer asked for permission to search plaintiff's car.  Plaintiff again

21  declined.  The officer said that it was likely the car would be towed and plaintiff

22  would not be able to get it back until the next day, Monday.

23      28.  After waiting for a couple more hours or so, a police detective came to

24  interview plaintiff yet again.  The detective said he wanted to go through plaintiff's

25  phone to see his Uber history.   Plaintiff then showed his Uber rides and locations to

26  the detective, who asked if he could obtain a copy.  Plaintiff responded that he was

27  fine with the detective downloading his Uber history, but that he did not consent to

28

1   downloading everything on the phone.   The detective responded that he was unsure

2   whether that (downloading only Uber information without anything else) was

3   possible.  The detective asked if plaintiff was willing to provide screen shots of the

4   history and plaintiff agreed.  However, the detective later stated the screen shots

5   where not necessary, and confirmed to plaintiff the information the detective

6   reviewed on plaintiff's phone cleared him as a suspect and didn't provide

7   information pertinent to the investigation.

8       29.  Finally, the detective asked plaintiff for permission to search plaintiff's

9   car.  Plaintiff declined.  Plaintiff, understanding that the interview was over, thought

10   that perhaps he was now free to leave.  However, when plaintiff stood up the

11   detective said, "Where are you going? Sit down!"  Plaintiff did not immediately sit

12   down but instead began to make a walking movement.  At this point the detective

13   went over to plaintiff, positioned his face directly in front of plaintiff's face, and

14   forcefully commanded plaintiff to sit down.  In addition, another officer in the room

15   began to make movements to approach plaintiff.   This caused plaintiff to believe

16   that he was not free to leave and that he would be physically restrained by the

17   detective and the other officer if he did not sit down.  Plaintiff then sat down again.

18       30.  Plaintiff reminded the detective of his living situation, i.e., that plaintiff

19   has no home locally, lives in his vehicle, and now has nowhere to go because the

20   police have taken his car.

21       31.  After hearing this, the detective responded, "This is your fault.  You are

22   not letting us search the car."  The detective also told plaintiff that the police were

23   going to keep his phone and that if he had a complaint he could go to the District

24   Attorney's office.

25       32.  The detective told plaintiff that another police officer would give him a

26   ride.  After being introduced, the officer discussed with plaintiff where plaintiff

27   would be dropped off.

28

33.  Plaintiff requested to be dropped off at the Salvation Army in the hopes that he would have a place to spend the night while he waited for his car.  The Salvation Army indicated there was no place for him to stay at their facility.

34.  Because the police had taken his phone, plaintiff had no ready access to the internet.  Thus, plaintiff walked around the city trying to find an affordable hotel.  As he walked, he found a FedEx store where he could use a computer to access the internet.  He ultimately found a hotel room for the night.

35.   The next day, Monday, plaintiff left the hotel and walked to the San Jose police station.  The auto desk receptionist informed plaintiff that his car "was not in the system" and that plaintiff needed to speak with the homicide unit for more information. A supervisor from the homicide unit named Sergeant Martinez came out and stated to plaintiff, "I don't know what's going on with the case. They are still working on the case. Let us search the car."  After making further inquiries and informing Sergeant Martinez of his living situation, i.e., that plaintiff has no home locally, lives in his vehicle, and now has nowhere to go because the police have taken his car, Sergeant Martinez stated, "It's your fault, you should not have been there. Let us search your car."   Plaintiff refused and then asked to speak with Sergeant Martinez' supervisor.  Sergeant Martinez responded that he was the supervisor.

36.   Again having no access to his car, plaintiff spent another night in a hotel. The next day, Tuesday, Nov. 28, plaintiff called the San Jose police department.  An officer named Sergeant Milliken spoke with plaintiff and said that it would take until Thursday (Nov. 30) or Friday (Dec. 1) to get a search warrant for the car. Plaintiff inquired about his phone, and offered to go down to the station to unlock the phone and review all information the officer's wished to see as long as they didn't download all data. i.e.. personal pictures and videos.  Sergeant Milliken ignored the offer.

37.  Having neither his phone nor his car, and faced with the prospect of spending night after night in expensive hotels, plaintiff opted to return to his residence in southern California on Wed., Nov. 29.  On Dec. 1, plaintiff activated another cell phone to replace the one taken by the police.

38.  On or about Dec. 11, Sergeant Milliken called plaintiff's new phone and said he wanted to update plaintiff on the situation.  The sergeant stated that the police were now working on a getting a search warrant for the phone in the hopes that they would then be able to get a search warrant for the car.    Plaintiff responded, "That's funny – it sounds like you don't have probable cause for my car or to get a warrant."  Sergeant Milliken responded by asking if plaintiff was available to unlock the car once a warrant was obtained, to which plaintiff responded affirmatively.

39.  On Dec. 12, Sergeant Milliken called plaintiff to inform him that the police now had a warrant for the phone.  The sergeant then asked plaintiff if he would come to the station to unlock the phone. Plaintiff asked to see a copy of the warrant, but Sergeant Milliken told plaintiff that a copy would be mailed to plaintiff.

40.  On Dec. 13 Sergeant Milliken called plaintiff and said words to the effect of, "We have searched your phone and we didn't find anything to implicate you for a search warrant on your car; we are going to facilitate the release of your car soon, will you be around? I will call you once it has been released so you can pick it up." Plaintiff agreed to wait for his call.   At around 4 p.m. on Dec. 13 Sergeant Milliken called plaintiff and stated he had left him a voicemail informing him his car could be retrieved. Plaintiff never received such a voicemail. Sergeant Milliken then explained that it was too late to pick up the car that day because the administrative section of the police station which handles car releases was closed and that plaintiff would need to pick up the car the next day.

41.  On Dec. 14, plaintiff went to the police station and received back his phone.  However, the phone was no longer functional because the police had removed, via desoldering, a critical microchip from the phone which made the phone non-functional.  Plaintiff also asked for his car back.  After engaging in a discussion with Sergeant Milliken, he was informed that he would need to pay $252 to the police department.  Sergeant Milliken confirmed that while Milliken had the authority to waive the charge, he was not going to do so in this case and thus plaintiff was forced to pay the police the full fee to release the car.

42.  After paying the release fee to the police, plaintiff was directed to a private tow yard where the car was physically parked.  Upon arriving, he was informed that he would need to pay an additional $390 to the tow yard in order to retrieve the vehicle.  Plaintiff paid the requested amount and was then finally given back possession of his car.

43.  No defendant had lawful cause or probable cause to arrest or detain plaintiff nor to impound plaintiff's property.   At no time did plaintiff give his consent to any of the actions engaged in by the police; rather, plaintiff did as he was commanded to do because he was being ordered to do so by police officers, including armed police officers.  Plaintiff did not voluntarily, of his own free will, go to the witness center nor did he voluntarily, of his own free will, give his phone to the police; rather, he did so because the words and actions of the police coerced him into doing so.

44.  At all times mentioned in the complaint, the involved police officers knew that plaintiff had the constitutional right to refuse to consent to warrantless search of his car, the constitutional right to refuse to consent to warrantless search of his phone, and the constitutional right to refuse to go to the witness center.  The City of San Jose is liable for all wrongs committed by its police officers by virtue of Cal. Govt. Code §815.2(a).

45.  At all times mentioned in the complaint, defendants intended to force and coerce plaintiff into giving up these constitutional rights so they could examine his phone and search his car.

46.  On the evening of the seizures, the involved police officers knew they did not have probable cause to obtain a search warrant nor did they have probable cause to seize plaintiff's car or phone.  Further, defendants knew that official department policy forbade all these seizures under these circumstances.

47.  Undaunted by the law, the involved police officers began a determined campaign to unlawfully coerce plaintiff into giving up his right against unreasonable searches of his car and phone, attempting to leverage the fact that plaintiff made his living via driving his car and that his car was also his temporary home while in Santa Clara County.  First, the police demanded that plaintiff hand over his driver's license but never returned it to him at the scene.  This had the immediately effect of making it unlawful for him to make money via his profession or to drive anywhere at all.  Next, the police threatened to impound plaintiff's car unless he waived his right against unreasonable searches.   When this intimidation didn't work, the police coerced plaintiff into going to a police facility rather than staying with his car. Defendants knew that this would cause hardship to plaintiff because of the time of day and being separated from his car and belongings.  Next, upon arrival at the police witness center, the police coerced plaintiff into handing over his phone even though they had no right to demand it.  Defendants did this knowing that it would further isolate plaintiff in that now he had no means of communicating with friends and family.   Next, plaintiff was grilled multiple times at the police facility and, when he tried to leave, was coerced into sitting back down again.  Then, the police detective interrogator suggested that all of this hardship was plaintiff's fault because plaintiff continued to invoke his right to refuse search of his car.  This campaign continued with the police taking plaintiff's car and Sergeant Martinez condemning

1  plaintiff for exercising his rights.  Further, even though the police had no warrant at

2  the time, they did not return plaintiff's phone to plaintiff, and when the police did

3  finally get a warrant, the phone was given back destroyed.  The police went so far as

4  to falsely state that they were going to get a warrant to search the car, but they never

5  did.  Finally, when the police decided that the coercion campaign was unsuccessful,

6  they insisted that plaintiff compensate them and their bailee hundreds of dollars for

7  the warrantless and unjustified, seizure and storage of his car.

8      48.  Plaintiff is informed and believes and thereon alleges that the City of San

9  Jose has "Duty Manual"  which prescribes allowable conduct of officers.  The Duty

10  Manual has a section called "L5210 Seizures of Vehicles" which outlines when a

11  vehicle may be seized as evidence.  Plaintiff is informed and believes and thereon

12  alleges that L5210 states that "An officer may seize a vehicle when the officer has

13  reasonable cause to believe that a vehicle is itself evidence of a crime (e.g., stolen),

14  contains evidence that cannot readily be removed at the scene (e.g., has irregularities

15  in the engine/VIN number), or was the means to commit a crime."  None of these

16  conditions were present in the case and thus the seizure of plaintiff's car was not

17  authorized by the Duty Manual.

18      49.  Plaintiff is informed and believes and thereon alleges that the Duty

19  Manual has a section entitled "L4505 Interrogations – Legal Restrictions".  This

20  section lists a set of factors which bear upon whether a person being questioned by

21  the police is now "in custody", i.e., seized or arrested.  Those factors include Place

22  of Questioning, Time of Questioning, Persons Present, Physical Restraint used,

23  Orders to Perform Tasks Not Required, Length and Form of Questioning, and

24  Demeanor of Officers.  The factors were overwhelmingly present in the police

25  treatment of plaintiff and confirm that plaintiff was seized.

26      50.  Plaintiff is informed and believes and thereon alleges that the Duty

27  Manual has a section entitled "L3808  Obtaining Search Warrants After Working

28

1   Hours - Emergency Situations". This section specifically instructs officers on how

2   to obtain a search warrant in less than one hour. Plaintiff is informed and believes

3   and thereon alleges that the police never sought to use this procedure or, alternately,

4   attempted to used it but were refused due to lack of probable cause. In either case,

5   the police had no right to seize plaintiff's car or phone without a warrant.

6      51.  As noted, the Duty Manual did not allow the police to seize plaintiff, his

7   car, and his phone as they did. This suggests that either (a) the City has adequate

8   official written policies but those policies are being countermanded by unlawful,

9   unwritten customs with the knowledge of police decision makers; or (b) the City has

10   adequate official written policies but fails to train its officers to comply with those

11   policies and/or is deliberately indifferent to officers' noncompliance, or (c) highly

12   ranked officers such as detectives and sergeants are, by custom, excused from

13   complying with constitutional norms.

14      52.  Plaintiff is informed and believes and thereon alleges that the City of San

15   Jose is deliberately indifferent in regard to the property rights of innocent third-

16   parties whose property has been seized without a warrant. This allegation is made

17   based on the following facts which plaintiff is informed and believes are true based

18   upon the Duty Manual and the facts of this case:  (a) The Duty Manual does not

19   appear to prescribe release procedures to be followed when the City seizes personal

20   property from innocent parties without a warrant as potential evidence; (b) the City

21   gives sergeants and/or other high ranking officers unlimited discretion to refuse to

22   release personal property seized without a warrant from innocent owners unless and

23   until the owner of the property pays to the City whatever fee said sergeant or officer

24   demands; (c) the City allows sergeants and/or other high ranking officers the right to

25   transfer property seized from innocent persons without a warrant to a third-party

26   bailee, with the understanding that the bailee need not release the personal property

27

28

1   to the innocent owner unless and until the owner (and not the City) pays whatever

2   fees the bailee chooses to impose.

3       53.  This incident caused many losses for plaintiff including, without

4   limitation:

5          (a) lost income due to plaintiff's inability to pick up Uber riders;

6          (b) hotel and other expenses which would not have been incurred had he

7   retained possession of his car; and

8          (c) destruction of his phone.

9       54.  On February 7, 2018, plaintiff filed a claim with the City of San Jose.

10  Plaintiff has never received either written acceptance nor written rejection of his

11  February claim filed with the City of San Jose.  The City's failure to either accept or

12  reject the claim within 45 days means that the claim is deemed rejected by operation

13  of law.

14  **FIRST CAUSE OF ACTION**

15  **Violation Of Fourth And Fourteenth Amendments**

16  **To The U.S. Constitution**

17  **42 U.S.C. § 1983**

18  **(Against All Defendants)**

19      55.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

20      56.  The acts of defendants deprived plaintiff of his right to be secure in his

21  person and effects against unreasonable searches and seizures under the Fourth and

22  Fourteenth Amendments to the United States Constitution.  Defendants knew or

23  should have known that seizing plaintiff, his car, and his phone without a warrant

24  was unlawful under the circumstances and lacked probable cause.

25      57.  All of the acts of the individual police officers were done under the color

26  and pretense of the statutes, ordinances, regulations, customs, and usages of the City

27  of San Jose and the San Jose Police Department.

28

58.  As a direct and proximate result of defendants' actions, plaintiff suffered humiliation, embarrassment, discomfort, anxiety, loss of reputation, emotional distress, loss of his liberty and freedom, loss of property, and loss of income.

59.  The individual defendants' actions against plaintiff were malicious, oppressive and/or in reckless disregard of the plaintiff's rights.  Accordingly, plaintiff is entitled to punitive damages as against the individual defendants.

**SECOND CAUSE OF ACTION**

**Violation Of Fifth And Fourteenth Amendments**

**To The U.S. Constitution**

**Taking of Property and Deprivation of Liberty**

**Without Due Process of Law**

**42 U.S.C. § 1983**

**(Against All Defendants)**

60.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

61.  The acts of defendants violated plaintiff's rights to substantive due process under the Fifth and Fourteenth Amendment to the United States Constitution.  Further, the acts of defendants deprived plaintiff of liberty and property without due process of law under the same.

62.  Further,  the acts of defendants served as a taking in under the Fifth and Fourteenth Amendment to the United States Constitution for which plaintiff is entitled to compensation.

63.  All of the acts of the individual police officers were done under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the City of San Jose and the San Jose Police Department.

64.  As a direct and proximate result of defendants' actions, plaintiff suffered humiliation, embarrassment, discomfort, anxiety, loss of reputation, emotional distress, loss of his liberty and freedom, loss of property, and loss of income.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIRD CAUSE OF ACTION**

**Violation Of Civil Code §52.1**

**(Against All Defendants)**

65.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

66.  Defendants intentionally intimidated plaintiff and interfered with his right to be free from unlawful search and seizure and due process rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article I, §§13 & 19, of the California Constitution, California statutory law, and California common law, including without limitation, all causes of action set forth in this complaint.  This conduct was a violation of California Civil Code §52.1.

67.  As a direct and proximate result of defendants' actions, plaintiff suffered humiliation, embarrassment, discomfort, anxiety, loss of reputation, emotional distress, loss of his liberty and freedom, loss of property, and loss of income.

68.  The individual defendants' actions against plaintiff were malicious, oppressive and/or in reckless disregard of the plaintiff's rights.  Accordingly, plaintiff is entitled to punitive damages as against the individual defendants.

**FOURTH CAUSE OF ACTION**

**(FALSE ARREST)**

**(Against All Defendants)**

69.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

70.  Plaintiff was falsely arrested when, without probable cause, he was coerced into going to the police witness center and forced to spend many hours waiting there to answer questions.  Further, the totality of the circumstances show that plaintiff was "seized" by the police and "in custody" of the police on the night in question.

71.  As a direct and proximate result of defendants' actions, plaintiff suffered humiliation, embarrassment, discomfort, anxiety, loss of reputation, emotional distress, loss of his liberty and freedom, loss of property, and loss of income.

72.  The individual defendants' actions against plaintiff were malicious, oppressive and/or in reckless disregard of the plaintiff's rights.  Accordingly, plaintiff is entitled to punitive damages as against the individual defendants.

## FIFTH CAUSE OF ACTION
## (FALSE IMPRISONMENT)
### (Against All Defendants)

73.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

74.  Plaintiff was falsely and imprisoned when he was coerced into going to the police witness center and forced to spend many hours waiting there to answer questions.

75.  As a direct and proximate result of defendants' actions, plaintiff suffered humiliation, embarrassment, discomfort, anxiety, loss of reputation, emotional distress, loss of his liberty and freedom, loss of property, and loss of income.

76.  The individual defendants' actions against plaintiff were malicious, oppressive and/or in reckless disregard of the plaintiff's rights.  Accordingly, plaintiff is entitled to punitive damages as against the individual defendants.

## SIXTH CAUSE OF ACTION
## (CONVERSION)
### (Against All Defendants)

77.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

78.  Defendants wrongfully exercised control over his personal property, namely, his car and his phone.

79.  As a direct and proximate result of defendants' actions, plaintiff suffered humiliation, embarrassment, discomfort, anxiety, loss of reputation, emotional distress, loss of his liberty and freedom, loss of property, and loss of income.

80.  The individual defendants' actions against plaintiff were malicious, oppressive and/or in reckless disregard of the plaintiff's rights.  Accordingly, plaintiff is entitled to punitive damages as against the individual defendants.

## SEVENTH CAUSE OF ACTION
## (TRESPASS TO CHATTELS)
### (Against All Defendants)

81.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

82.  Defendants wrongfully trespassed on plaintiff's right to his personal property, namely his car and his phone.

83.  As a direct and proximate result of defendants' actions, plaintiff suffered humiliation, embarrassment, discomfort, anxiety, loss of reputation, emotional distress, loss of his liberty and freedom, loss of property, and loss of income.

84.  The individual defendants' actions against plaintiff were malicious, oppressive and/or in reckless disregard of the plaintiff's rights.  Accordingly, plaintiff is entitled to punitive damages as against the individual defendants.

## EIGHTH CAUSE OF ACTION
## (Negligence)
### (Against All Defendants)

85.  Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

86.  At all times, each defendant owed plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation and each defendant owed plaintiff the duty to act with reasonable care.

87. This general duty of reasonable care owed to plaintiff by all defendants included, but was not limited to, refraining from violating the right to be free from unreasonable searches and/or seizures, as secured by the Fourth and Fourteenth Amendments; and refraining from violating the right to be free from unreasonable searches and seizures, as secured by the California Constitution, Article I, §13.

88.  By the acts and omissions set forth more fully in the paragraphs above, defendants acted negligently and breached their duty of due care owed to plaintiff, which foreseeably resulted in the suffering of damages by plaintiff.

89. The foregoing wrongful acts were a proximate cause of plaintiff's injuries and damages. Plaintiff is therefore entitled to general and compensatory damages in an amount to be proven at trial.

WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AGAINST DEFENDANTS AS FOLLOWS:

**ON THE FIRST CAUSE OF ACTION:**

1.  General damages in an amount no less than $50,000;

2.  Special damages and exemplary damages according to proof;

3.  Punitive damages as against the individual defendants;

4.   Costs, interest and attorneys' fees pursuant to plaintiffs to 42 U.S.C. §1988 and other pertinent federal law; and

5.  Such other and further relief as the court deems just and proper.

**ON THE SECOND CAUSE OF ACTION:**

1.  General damages in an amount no less than $50,000;

2.  Special damages and exemplary damages according to proof;

3.  Punitive damages as against the individual defendants;

1           4.   Costs, interest and attorneys' fees pursuant to plaintiffs to 42 U.S.C.

2  §1988 and other pertinent federal law; and

3           5.  Such other and further relief as the court deems just and proper.

4

5        **ON THE THIRD CAUSE OF ACTION:**

6        1.  General damages in an amount no less than $50,000;

7        2.  Special damages and exemplary damages according to proof;

8        3. Award statutory penalties to plaintiff pursuant to California Civil Code

9  §52, et seq.;

10        3.  Punitive damages as against the individual defendants;

11        5.  Costs, interest and attorneys' fees to plaintiff pursuant to California Civil

12  Code §52, §52.1 and other pertinent California law; and

13        6.  Such other and further relief as the court deems just and proper.

14

15        **ON THE FOURTH CAUSE OF ACTION:**

16        1.  General damages in an amount no less than $50,000;

17        2.  Special damages and exemplary damages according to proof;

18        3.  Punitive damages as against the individual defendants;

19        4.   Costs;  and

20        5.  Grant such other and further relief as the court deems just and proper.

21

22        **ON THE FIFTH CAUSE OF ACTION:**

23        1.  General damages in an amount no less than $50,000;

24        2.  Special damages and exemplary damages according to proof;

25        3.  Punitive damages as against the individual defendants;

26        4.   Costs;  and

27        5.  Grant such other and further relief as the court deems just and proper.

28

1

2      **ON THE SIXTH CAUSE OF ACTION:**

3      1.  General damages in an amount no less than $50,000;

4      2.  Special damages and exemplary damages according to proof;

5      3.  Reasonable compensation for the time and money spent by plaintiff in

6      attempting to recover the his car and phone;

7      4.  Punitive damages as against the individual defendants;

8      5.   Costs;  and

9      6.  Grant such other and further relief as the court deems just and proper.

10

11      **ON THE SEVENTH CAUSE OF ACTION:**

12      1.  General damages in an amount no less than $50,000;

13      2.  Special damages and exemplary damages according to proof;

14      3.  Reasonable compensation for the time and money spent by plaintiff in

15      attempting to recover the his car and phone;

16      4.  Punitive damages as against the individual defendants;

17      5.   Costs;  and

18      6.  Grant such other and further relief as the court deems just and proper.

19

20      **ON THE EIGHTH CAUSE OF ACTION:**

21      1.  General damages in an amount no less than $50,000;

22      2.  Special damages and exemplary damages according to proof;

23      3.   Costs;  and

24      4.  Grant such other and further relief as the court deems just and proper.

25

26

27

28

1

2    Dated: July 12, 2018

3
                                              _____
4                                             MICHAEL MILLEN, ESQ.
                                              ATTORNEY FOR PLAINTIFF
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY DEMAND**

Plaintiffs hereby requests a jury trial in this matter.

Dated: July 12, 2018

_____
MICHAEL MILLEN, ESQ.
ATTORNEY FOR PLAINTIFF